**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KAY BROTHERS ENTERPRISES, INC., an Illinois Corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>JOSEPH PARENTE, DAWN PARENTE, PROVENCAL CONSTRUCTION COMPANY, an ILLINOIS CORPORATION, RON VARI, R. VARI & ASSOCIATES, LLC, HAROLD LIESENFELT, and MICHAEL CANDELA,<br><br>      Defendants.<br>_____<br>JOSEPH PARENTE and DAWN PARENTE,<br><br>      Third-Party Plaintiffs,<br><br>      v.<br><br>ROBERT MIFFLIN, d/b/a R.A. MIFFLIN ARCHITECTS,<br><br>      Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 16 C 387<br>)<br>)   Judge Sara L. Ellis<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This case arises out of a negotiation to build a stately home in Burr Ridge, Illinois, gone awry. Plaintiff Kay Brothers Enterprises, Inc. ("KBEI"), alleges that Defendants Joseph and Dawn Parente misappropriated architectural plans for which KBEI owns the copyright and distributed them to Defendants Provencal Construction Company ("Provencal"), Harold Liesenfelt, Michael Candela, Ron Vari, and R. Vari & Associates, LLC, to be used in the construction of a custom home for the Parentes. KBEI brings claims for copyright infringement

against all defendants and a claim for Quantum Meruit against the Parentes. The Parentes answered KBEI's Second Amended Complaint ("SAC") and filed a third-party complaint naming KBEI's architect Robert Mifflin d/b/a R.A. Mifflin Architects, alleging that Mifflin breached his contract with the Parentes to modify architectural drawings for the Parentes to use in the construction of their home by purporting to transfer ownership of the copyright in those drawings to KBEI. The Parentes also allege that Mifflin violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, by failing to disclose to the Parentes that he had assigned his ownership interest in the Plans to KBEI and that he therefore lacked authority to enter into the agreement with the Parentes to modify those plans for use in construction of their home.

Discovery has closed and the Parentes and KBEI now cross move for summary judgment on the copyright claim. KBEI moves for partial summary judgment as to the Parentes' liability and the Parentes move for summary judgment arguing that they had an implied non-exclusive license to use the revised Plans to build their home. Provencal and its principles Liesenfelt and Candela also move for summary judgment on the copyright claim against them, arguing that if the Court grants summary judgment in favor of the Parentes, their liability by extension is also extinguished. Finally, Mifflin moves for the second time to dismiss the claims against him, arguing that the ICFA claim is inadequately pleaded under Federal Rule of Civil Procedure 9(b), that the Parentes have not adequately alleged standing to bring their ICFA claim, that the Parentes do not allege that Mifflin engaged in a deceptive or unfair practice necessary to state an ICFA claim, and that the Parentes do not allege damages sufficient to support their breach of contract claim.

Because there is a genuine dispute as to whether KBEI's objective conduct demonstrated intent to provide the Parentes with a non-exclusive license to use the Plans to build their home, the Court denies all three motions for summary judgment. And, because the Court previously found the Parentes' ICFA claim adequately pleaded and they are not required to amend their complaint after discovery, and because the Parentes otherwise adequately pleaded their ICFA claim, the Court denies Mifflin's motion to dismiss the ICFA claim. Additionally, the Court denies Mifflin's motion to dismiss the breach of contract claim because the Parentes adequately alleged damages.

Finally, the Parentes also bring a motion to strike various portions of the declarations KBEI submits in support of its Statement of Additional Disputed Facts ("SADF"). The Court denies this motion because the challenged statements are not hearsay and are consistent with prior deposition testimony.

## BACKGROUND[1]

### A.    The Parties

Defendants Joseph and Dawn Parente, husband and wife, are residents of Burr Ridge, Illinois. The Parentes are the owners of a home located at 8734 Johnston Road, Burr Ridge, Illinois (the "Johnston Residence"). Defendant Provencal Construction Company ("Provencal") is a construction company that built the Johnston Residence for the Parentes. Defendants Candela and Liesenfelt are the sole shareholders of Provencal. Defendant Vari is a friend of Joseph Parente and an architect. Vari is the principal of Defendant R. Vari & Associates, LLC.

---

[1] The facts in this section are derived from the parties' Joint Statements of Undisputed Material Facts, Docs. 142 & 148, and the Third-Party Complaint, Doc. 115. The Court includes in this background section only those portions of the statements of fact that are appropriately presented, supported, and relevant to resolution of the pending cross-motions for summary judgment and motion to dismiss. All facts are taken in the light most favorable to the non-movant in each motion.

Plaintiff KBEI is an Illinois corporation that constructs single-family homes, including both custom and speculative homes. John Kajmowicz and Robert Kajmowicz are the sole owners of KBEI. Third Party Defendant Mifflin is an architect. Mifflin owned R.A. Mifflin Architects.

### B.    The Original Plans

In 2002, at KBEI's request, Mifflin prepared a set of architectural drawings for a single-family home to be constructed on a KBEI-owned lot at 6679 Lee Court, Burr Ridge, Illinois (the "Original Plans"). On June 13, 2002, Mifflin executed an assignment of rights in the Original Plans to KBEI. KBEI never constructed the residence depicted in the Original Plans.

In 2008, the Parentes acquired a vacant lot at 8734 Johnston Road adjacent to their existing residence in Burr Ridge, Illinois. Sometime prior to 2009, the Parentes met with Bob Kajmowicz, who showed the Parentes the Original Plans prepared by Mifflin. The Parentes elected not to build a new residence at that time and their discussions with KBEI ceased without any agreement to do business together.

### C.    Modification of the Plans

In 2014, the Parentes elected to move forward with building a new residence on their vacant lot on Johnston Road. In November 2014, KBEI and the Parentes met to review the Original Plans and discuss modifications to conform the drawings to the 8734 Johnston Road lot and to the Parentes' personal taste. At Bob Kajmowicz's invitation, Mifflin attended a November 2014 meeting to discuss Mifflin making the Parentes' requested modifications to the Original Plans. This was the first time the Parentes met Mifflin. KBEI consented to Mifflin making modifications to the Original Plans at the direction of the Parentes and did not require that the Parentes sign a build-to-suit contract prior to Mifflin modifying the Original Plans.

4

Mifflin prepared a letter agreement dated November 13, 2014 (the "Letter Agreement"), proposing terms for the revisions of the Original Plans for the Parentes' Johnston Residence. The Letter Agreement required the Parentes to pay Mifflin $10,000 and provided for additional services to be billed at an hourly rate. Mifflin sent a draft of the Letter Agreement to John Kajmowicz for KBEI's review and approval before transmitting the Letter Agreement to the Parentes. John Kajmowicz instructed Mifflin to revise the Letter Agreement to denote that the Original Plans were "owned by" KBEI. Mifflin did not make this change.

The Letter Agreement did not condition the Parentes' use of the modified version of the Original Plans (the "Modified Plans") upon KBEI serving as their builder. The Letter Agreement stated that "[t]he original plans were prepared for [KBEI] and designed for their lot at 6679 Lee Court, Burr Ridge." Doc. 142-15. The Letter Agreement proposed that in consideration of a "fixed fee" of $10,000, "[r]evisions will be completed, based on this existing set of drawings in order for the proposed home to be constructed on a walk out lot (#69) in the Highland Fields subdivision, Burr Ridge, owned by Mr. and Mrs. Joseph Parente." *Id.*

On December 10, 2014, John Kajmowicz emailed the unsigned Letter Agreement to the Parentes; this version also did not state that KBEI owned the Original Plans. Joseph Parente believes he signed the Letter Agreement on December 9, 2014. Mifflin received a signed copy of the Letter Agreement sometime in December 2014. The Parentes paid Mifflin $11,700 by March 1, 2015, and made an additional, final payment of $500 in August 2015, completing payment for Mifflin's services pursuant to the terms of the Letter Agreement.

At some point, Bob Kajmowicz, on behalf of KBEI, delivered the Modified Plans to the Parentes. KBEI never told Mifflin not to deliver copies of the Modified Plans to the Parentes. On February 20, 2015, KBEI submitted the architectural plans, a building permit application, and

$1,000.00 to the Village of Burr Ridge for the construction of the Johnston Residence.  The Parentes have never reimbursed KBEI the $1,000.00.

### D.    Build-to-Suit Contract Negotiations

From February 2015 to July 2015, the Parentes and KBEI negotiated a build-to-suit contract for the Johnston Resident.  The negotiations produced at least five iterations of the build-to-suit contract.  On June 5, 2015, Joseph Parente's attorney e-mailed an iteration of the build-to-suit contract to Joseph Parente and John Kajmowicz, asking KBEI to sign and return the contract.  But KBEI did not sign because the parties were unable to agree upon a penalty clause in the event of KBEI's delayed performance, and negotiations deteriorated.

On July 7, 2015, John Kajmowicz e-mailed Joseph Parente stating, "Joe please be advised that after emails and phone calls with no response.  Kay Bros Ent. is no longer involved in any of your current or future building efforts.  Also be advised that the current plans you have in your possession for 8734 Johnston Road, Burr Ridge, IL are the sole property of Kay Bros Ent. and any use, alteration or reproduction of the (sic) these drawings and plans without consent from Kay Bros Ent. is strictly prohibitive (sic) and will be strongly enforced.  Feel free to call and discuss."  Doc. 142-31.

On July 7, 2015, Joseph Parente responded to John Kajmowicz's e-mail stating "Ok." On July 7, 2015, Joseph Parente responded to John Kajmowicz's e-mail again stating "E-mail got caught (sic) off . . . Ok, will call to discuss."  Doc. 142-31.  Joseph Parente never called John Kajmowicz or Bob Kajmowicz to discuss the issues raised in John Kajmowicz's July 7, 2015 e-mail.

## E.        Village Approval and Construction with Another Builder

Before negotiations between KBEI and the Parentes formally collapsed, the Village of Burr Ridge (the "Village") approved the Modified Plans for the Johnston Residence, and on June 16, 2015, Joseph Parente paid the Village $17,019.20 for the building permit and performance bond for the construction of the Johnston Residence.  The Village provided the Parentes copies of the Modified Plans on file at the Village.

On June 26, 2015, Vari, on behalf of Joseph Parente, e-mailed Mifflin requesting that he forward copies of the Modified Plans for the Johnston Residence to him.  On June 27, 2015, Mifflin responded that he would not send copies of the plans to Vari because the Parentes were not using KBEI to construct the Johnston Residence.

On July 7, 2015, Vari e-mailed Joseph Parente inquiring whether he should reach out to Mifflin for an "engineers's (sic) grading plan."  On July 7, 2015, Joseph Parente forwarded John Kajmowicz's July 7, 2015 e-mail to Vari.  On July 7, 2015, Joseph Parente responded to Vari's e-mail regarding reaching out to Mifflin by saying "No."  Doc. 142-32.

On August 16, 2015, Mifflin e-mailed a copy of his invoice for modifications to the Original Plans to Vari and asked, "Is anybody going to pay this?"  Doc. 142-34.  Vari forwarded Mifflin's e-mail to Joseph Parente.  Joseph Parente responded to Vari by e-mail stating, "Sure if I get release of ownership of prints . . . If not, no."  *Id*.  On August 17, 2015, Vari e-mailed Mifflin stating, "Hi Bob spoke to Joe he indicated that he would like a release from the Kay brothers (sic) indicating that Joe now has ownership of the prints and he would be happy to pay the balance."  *Id*.  On August 19, 2015, Mifflin responded to Vari's e-mail stating "The $500.00 is the balance remaining for revisions as requested by Joseph Parente to existing Kay builder plans. The changes are complete and a permit was issued.  The final payment is due.  As far as Joseph's

request for a release of the plans from the [KBEI], they are the property of [KBEI], I have nothing to say about that. You should contact them regarding the rights to the plans." *Id*.

Joseph and Dawn Parente never requested that KBEI grant them consent to freely copy, distribute, or otherwise use the Original Plans or the Modified Plans. Joseph and Dawn Parente took no action to obtain KBEI's consent to use the Modified Plans in the construction of their home with a homebuilder other than KBEI. Joseph and Dawn Parente never inquired whether KBEI would object to their use of either set of plans with a homebuilder other than KBEI.

The Parentes eventually contracted with Provencal on September 11, 2015, to construct the Johnston Residence using the Modified Plans. Provencal completed construction of the Johnston Residence in June 2017. KBEI never received payment of any kind from Joseph and Dawn Parente.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id*. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v.*

*Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case. *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

**ANALYSIS**

## I.     Motion to Strike

As an initial matter, the Court addresses the Parentes' Motion to Strike portions of declarations KBEI filed in support of its SADF.  The Court's summary judgment procedures differ from Local Rule 56.1, in that this Court requires the parties to submit a joint statement of undisputed facts.  *See Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 711–12 (7th Cir. 2015) (affirming this Court's summary judgment case management procedures).  The party opposing summary judgment may, however, submit additional facts it contends demonstrate a genuine issue of material fact in its response, providing citations to supporting material.  *Id.*; Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice, http://www.ilnd.uscourts.gov/judge-info.aspx?VyU/OurKKJRDT+FUM5tZmA==.  These additional facts must be genuinely disputed; the non-moving party may not use the response as an opportunity to sidestep the joint process.  *See* Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice ("The parties may not file—and the Court will not consider—separate statements of undisputed facts.").

Here, KBEI has submitted the SADF along with its response to the Parentes' Motion for Summary Judgment.  In support of the facts included in the SADF, KBEI attached sworn declarations from John Kajmowicz, Robert Kajmowicz, and Robert Mifflin.  The Parentes argue that the Court should strike paragraph 6 of the Mifflin Declaration because it contradicts his prior deposition testimony.  The Parentes also ask the Court to strike paragraph 8 of the John Kajmowicz Declaration, paragraph 7 of the Robert Kajmowicz Declaration, and paragraph 5 of the Mifflin Declaration because they contain inadmissible hearsay.

### A.     Paragraph 6 of the Mifflin Declaration

Paragraph 6 of the Mifflin Declaration states:

6.      At one of the above-mentioned meetings, I presented
Joseph and Dawn Parente a proposal for architectural services for
the revisions to the Architectural Drawing.  Joseph Parente signed
that proposal in my presence.  I took possession of the copy of the
executed proposal.  Neither John Kajmowicz nor Bob Kajmowicz
received a copy of the executed proposal at that meeting.  I
provided John Kajmowicz a copy of the executed proposal in 2015
after he informed me KBEI was preparing to file a lawsuit against
Joseph Parente.

Doc. 145-1, Ex. C ¶ 6.

The Parentes argue that this paragraph contradicts his sworn deposition testimony and the

Court should, therefore, strike it.  An affidavit that contradicts prior sworn testimony is subject to

being stricken unless the prior testimony was ambiguous, confusing, or the result of a memory

lapse.  *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015).  But a party objecting to the motion to

strike must show that these causes for discrepancy are plausible.  *Russell v. Acme-Evans Co.*, 51

F.3d 64, 68 (7th Cir. 1995).

The relevant portions of Mifflin's prior testimony state:

Q: Did you draft this letter, sir?

Mrs. Lynch: Exhibit 6?

Mr. Heftman: Yes.

A: Yes. Mm-hmm.

****

Q. Did you transmit this document to anyone?

A: Yeah, I assume I sent that probably to Kay Builders.

Q: Did you send it to Joseph Parente?

A: At the same time?

Q: At any time?

11

A: I don't recall how Mr. Parente received this document.

*See* Doc. 142-9, Deposition of Robert Mifflin, 46:1–9; 47:6–14.  Mifflin also stated:

Q: Okay. Who transmitted the signed copy of Exhibit 6 to you?

A: I don't recall.

*Id.* at 48:1–3.

The Parentes argue that these statements at Mifflin's deposition contradict his statements in the Mifflin Declaration because he previously professed that he does not recall how he came to possess the signed version of the Letter Agreement and does not recall how Joseph Parente came to possess the Letter Agreement.  KBEI argues that these statements are not contradictory at all, because in his original deposition he only testified that he did not know how Exhibit 6, which is the executed version of the Letter Agreement, came into the Parentes' possession, whereas the declaration speaks to Mifflin's presentation of the unsigned version of the Letter Agreement to the Parentes.  The original testimony on this point is ambiguous at best, but in the context of the deposition it appears reasonable that Mifflin was only speaking about the executed version and not the unexecuted version.  Therefore, the Court denies the motion with respect to the first two sentences of paragraph 6.

The Parentes also move to strike the third sentence, which states, "I took possession of the copy of the executed proposal."   Doc. 145-1, Ex. C ¶ 6.  The Parentes argue that this contradicts Mifflin's deposition testimony when, in response to the question, "Who transmitted the signed copy of Exhibit 6 to you," he stated, "I don't recall."  Doc. 142-9, Deposition of Robert Mifflin, 48:1–3.  As KBEI points out, the deposition testimony specifically asks who gave him the signed Letter Agreement, whereas the Mifflin Declaration states only that he took

possession of it at the December 2014 meeting.  These statements are not inconsistent and

therefore, the Court denies the motion to strike this portion of the Mifflin Declaration.

**B.     Motion to Strike Hearsay Statements**

The Parentes also move to strike several statements in the three declarations that they

argue are inadmissible hearsay.  A court may not rely upon inadmissible hearsay when ruling on

summary judgment absent a showing from the party seeking to use the hearsay, that the evidence

could be readily replaced at trial with admissible evidence.  *Minor v. Ivy Tech State Coll.*, 174

F.3d 855, 856–57 (7th Cir. 1999).

The Parentes seek to strike paragraph 5 of the Mifflin Declaration, which states:

> 5.      At one of these meetings, I witnessed John and Bob
> Kajmowicz inform Joseph and Dawn Parente that revisions to the
> Architectural Drawings would be needed for [KBEI] to price the
> cost of construction for the home. I also witnessed John and Bob
> Kajmowicz inform Joseph and Dawn Parente that only KBEI can
> build the home depicted on the Architectural Drawings because
> they owned the same. Joseph and Dawn Parente acknowledged
> John and Bob Kajmowicz' statements.

Doc. 145-1, Ex. C ¶ 5.

This statement is not hearsay because it is not offered for the truth of the matter asserted.

In the SADF, this paragraph is cited in support of two disputed facts: that KBEI informed the

Parentes that the purpose of the modification of the Original Plans was to allow KBEI to price

construction and that the Kajmowiczes told the Parentes that only KBEI could build the home

depicted in the Modified Plans and that the Parentes acknowledged being told this.  Mifflin's

statement is not being used to prove that either of those things is true, only that they were said.

This is not hearsay.

The Parentes also seek to exclude paragraph 8 of the John Kajmowicz Declaration, which

states:

> 8.    At my third meeting with the Parentes and at the time
> KBEI agreed to allow Mifflin to make revisions to the
> Architectural Drawings, I told Joseph and Dawn Parente that even
> though Mifflin is revising the drawings, only KBEI can build the
> home depicted in the Architectural Drawings.  During the same
> meeting, Bob Kay reiterated the substance of my statement to
> Joseph and Dawn Parente.  Joseph and Dawn Parente
> acknowledged my statement and Bob Kay's statement and
> expressed their interested in having KBEI build the home depicted
> in the Architectural Drawings for them.

Doc. 145-1, Ex. A ¶ 8.

The Parentes argue that the statement that "Bob Kay reiterated the substance of my statement to Joseph and Dawn Parente" is inadmissible hearsay.  Again, this is not being advanced for the truth of the underlying statement that only KBEI can build the home in the Plans, but for the fact that Bob Kajmowicz said as much.

The Parentes move to strike paragraph 7 of the Robert Kajmowicz Declaration, which states:

> 7. At the time KBEI agreed to allow Mifflin to revise the
> Architectural Drawings, I told Joseph and Dawn Parente that even
> though Mifflin is revising the drawings, only KBEI can build the
> home depicted in the Architectural Drawings.  At the same
> meeting, my brother John Kay made a similar statement to Joseph
> and Dawn Parente.  Joseph and Dawn Parente acknowledged my
> statement and John Kay's statement and expressed their interest in
> having KBEI build the home depicted on the Architectural
> Drawings for them.

Doc. 145-1, Ex. A ¶ 8.

This paragraph, which is substantially similar to paragraph 8 in the John Kajmowicz Declaration, is also not hearsay.  Therefore, the Court denies the motion to strike this paragraph as well.

For the foregoing reasons, the Court denies the Parentes' Motion to Strike.

## II.    Cross Motions for Summary Judgment

KBEI moves for partial summary judgment as to liability for copyright infringement against the Parentes.  The Parentes oppose this motion and move for summary judgment on the copyright infringement claim arguing that KBEI granted them an implied non-exclusive license to use the Modified Plans and therefore, they did not infringe KBEI's copyright on the Plans.

To prove copyright infringement, a plaintiff must prove two things: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016) (citation omitted) (internal quotation marks omitted).  But "the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996).  The burden of proving the existence of such a license rests with the accused infringer.  *Muhammad-Ali*, 832 F.3d at 761.

The undisputed facts establish that KBEI owned the Plans and that the Parentes copied the Plans.  This is sufficient to prove copyright infringement.  In their response to KBEI's motion for summary judgment, the Parentes do not address the two elements of infringement; instead, they focus solely on their purported non-exclusive license.  For the reasons stated below the Court finds that there is a genuine dispute as to a material fact regarding the existence of the implied non-exclusive license such that the Court must deny both KBEI and the Parentes' motions for summary judgment.

### A.    Implied Non-Exclusive License

An accused infringer can avoid liability for copyright infringement if he or she can prove the existence of an implied non-exclusive license to make use of copyrighted material. *Muhammad-Ali*, 832 F.3d at 761.  An implied non-exclusive license is created when, "(1) a

15

person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Shaver*, 74 F.3d at 776. A party may grant the license orally or even imply it from the party's conduct. *Id.* at 775. "When the totality of the parties' conduct indicates an intent to grant such permission, the result is a legal nonexclusive license." *Fox Controls, Inc. v. Honeywell, Inc.*, No. 02 C 346, 2005 WL 1705832, at *5 (N.D. Ill. July 14, 2005) (quoting *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997)). And "[t]he relevant intent is the licensor's objective intent at the time of the creation and delivery" of the work. *Joint Comm'n Res., Inc. v. Siskin Techs., Inc.*, No. 14 CV 1843, 2016 WL 5477515, at *4 (N.D. Ill. Sept. 29, 2016) (quoting *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008)).

### 1. The Parentes Requested Creation of the Modified Plans

The Parentes met with KBEI and Mifflin in late 2014 to discuss building their custom home. However, the plans Mifflin had previously drawn for KBEI and that KBEI had shown to the Parentes were not suitable for the topography of the lot, and the Parentes wanted to make other modifications to those plans to suit their personal tastes. The Parentes asked Mifflin to modify the plans, which he agreed to do.

KBEI argues that because the Parentes only requested modifications to already existing plans, they do not satisfy this prong. However, the modified plans are themselves distinct copyrighted plans that Mifflin created at the request of the Parentes. Although they are based on the prior work, they are not the same thing as the prior work, but instead, are a derivative work. 17 U.S.C.A. § 101 ("A 'derivative work' is a work based upon one or more preexisting works."). Derivative works are copyrightable in their own right. *See Schrock v. Learning Curve Int'l, Inc.*,

586 F.3d 513, 522 (7th Cir. 2009) (discussing copyrightability of derivative works).  Therefore, the Court finds that the request for modified plans satisfies this prong.

### 2.    Mifflin Modified the Plans and KBEI and Mifflin Delivered them to the Parentes

There is no dispute that after signing the Letter Agreement, Mifflin modified the Original Plans as requested by the Parentes to incorporate their personal preferences and to account for the topographical requirements of the Parentes' lot.  However, KBEI asserts that it did not deliver the Modified Plans to the Parentes, and rather, the Parentes had to obtain them from the Village after KBEI filed the plans along with the permit request.

In the JSUF, the parties state that "Bob Kajmowicz on behalf of KBEI delivered the modified architectural plans to the Parentes."  Doc. 142 ¶ 38.  But KBEI now argues that they never delivered *permit ready* plans to the Parentes and that the Parentes had to acquire those directly from the Village.  *See* SADF ¶ 11 ("Neither Robert Mifflin, John Kajmowicz, nor Robert Kajmowicz ever provided a final, completed, permit-ready set of architectural drawings to Joseph Parente.").  Setting aside the fact that the Court would have preferred KBEI to address the distinction KBEI now attempts to draw between the plans it delivered and the permitted plans during the drafting of the JSUF rather than through their supplemental statement of disputed facts, the Court finds that it makes no difference.  When KBEI submitted the architectural plans to the Village for approval, fully aware that the Parentes would obtain those plans directly from the Village when the Parentes paid the remaining balance on the permit, they effectively turned them over to the Parentes.

The purpose of this prong of the implied license test is to establish that the work in question was created and the licensee took possession of the work such that the licensee can

make use of it in the intended manner.  It is not to create an esoteric debate about what the meaning of "delivery" is.  The cases that KBEI cites in which delivery is truly at issue demonstrate this.  In *Joint Commission Resources*, the creator of the work (certain software packages) never delivered the source code for several of the programs and only delivered the executable code. 2016 WL 5477515, at *4.  The court found that this created a factual dispute about delivery because the claim in that case was based on the source code, not the executable code, and there was a disputed factual question as to whether the delivery of the executable code constituted delivery of the source code.  *Id.*   The important distinction between the two is that delivery of the source code would allow the licensee to make any modifications to the software and use it in any way it wishes, but it is unclear that the same could be said for the executable code.  *Id.* In this case, the Modified Plans are equivalent of the source code and there is no analogue to the executable code.

In another case dealing with source code, the court applied a broad definition of delivery holding that when the programmer stored source code on the licensee's computer, the programmer had delivered the source code, despite the fact that the licensee was unable to even locate the source code on its system without the programmer's assistance.  *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756–57 (9th Cir. 2008).  Similarly, in this case when KBEI tendered the plans to the Village, knowing that the Parentes could obtain them directly from the Village, they effectively delivered the plans.

According to the JSUF, Bob Kajmowicz delivered modified plans to the Parentes, and under KBEI's alternative version of events, the KBEI submitted the Plans to the Village and the Parentes obtained the Plans when they paid the remaining balance of the permit fee.  Under any reasonable interpretation of both versions, KBEI delivered the plans to the Parentes.

18

### 3.    KBEI's Intent Regarding the Plans

Intent is the crux of this issue and "[t]he relevant intent is the licensor's objective intent at the time of the creation and delivery of the [copyrighted material] as manifested by the parties' conduct." *Asset Marketing Systems*, 542 F.3d at 756; *see also Shaver*, 74 F.3d at 777 (relevant intent is not the parties' subjective intent but the outward manifestation of their intent). When evaluating the licensor's objective intent, the Court should look at the totality of the parties' conduct, including "(1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts . . . providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible." *Id.* This list is not exhaustive, but it provides a useful framework for examining the issue of intent. *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 41 (1st Cir. 2003).

Turning to the first factor, it appears clear that the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship. KBEI and the Parentes first discussed working together on building a home in or around 2008, but the Parentes decided not to use KBEI at that time. In 2014, the Parentes came back to KBEI to discuss building the Johnston Residence based on the plans KBEI had showed the Parentes during their prior discussion. There is no indication that the Parentes were interested in engaging in any relationship with KBEI beyond designing and building the Johnston Residence. This is different than the case of a software engineer who works with a company over a number of years designing and servicing software. *See, e.g.*, *Joint Comm'n Res., Inc.*, 2016 WL 5477515, at *4 (where software engineer

provided technical services and developed software for a company over ten years, there was evidence of an intention to remain involved perpetually). The fact that the Parentes paid for the modifications to the Original Plans for only one contemplated transaction weighs in favor of finding an implied license.

The second factor also favors finding the existence of an implied license. The only written agreement relating to the plans in this case is the Letter Agreement between Mifflin and the Parentes. The Letter Agreement does not include any requirement that the Parentes use KBEI as their builder if they want to use the plans. In fact, the Letter Agreement states clearly that the plans are being modified "in order for the proposed house to be constructed on [the Parentes' lot]." Doc. 142-15. It does not say, in order to allow KBEI to build the proposed house or in order to allow KBEI to accurately price the construction of the proposed house. The language broadly states that the parties are modifying the Original Plans in order to build the house, without limitation on who is to construct it. However, KBEI is not a party to the Letter Agreement, complicating the analysis. KBEI did have an opportunity to review and make edits to the Letter Agreement before the parties signed it, and Joseph Parente ultimately signed it in the presence of the Kajmowicz brothers without any objection from them. Therefore, it is reasonable to infer that KBEI consented to Mifflin making the proposed revisions to the Original Plans consistent with the terms of the Letter Agreement.

There is a dispute, however, about whether the Kajmowicz brothers told the Parentes that they only would allow Mifflin to modify the Original Plans so long as KBEI built the home. The Parentes state that the Kajmowiczes never made any such statement. If the Kajmowicz brothers did expressly condition the revisions to the Original Plans on their serving as builders for the

home, then this would defeat a claim of implied license. There can be no implied license when there is an express statement to the contrary.

Finally, the third factor is mixed. Both prior to and during the iterative back and forth process of modification of the Plans, KBEI engaged in behavior both consistent and inconsistent with the intention to grant an implied license. Prior to the modification of the plans, KBEI did not require the Parentes to sign anything acknowledging KBEI's ownership of the plans or limiting use of the plans to work done by KBEI. Furthermore, KBEI permitted the Parentes to directly engage Mifflin to modify the Original Plans, at substantial cost to the Parentes, without explicitly including any limitations in the Letter Agreement. KBEI did not put anything in writing regarding the use of the Modified Plans until after the relationship with the Parentes broke down. On the other hand, KBEI proceeded in ways consistent with a belief that they would be participating in an ongoing way. For example, KBEI paid for construction fencing to be erected around the Johnston lot, paid for the lot to be surveyed, and prepared it for sanitation. Additionally, KBEI submitted the plan to the Village for permitting.

Evaluating all of the objective circumstances together, the Court finds that it cannot grant summary judgment in favor of either party. A reasonable jury could conclude that when KBEI allowed the Parentes to pay $10,000 directly to Mifflin to modify the Plans, without first securing a contract to do the construction or otherwise communicating or memorializing that only KBEI could build the house based on the modified Plans, KBEI implicitly granted the Parentes a license to use those plans to build their home. By treating the modification of the Original Plans and the building of the home as two separate transactions, requiring separate negotiations, KBEI created a scenario under which it is more than reasonable to conclude that the Parentes' right to make use of the fruits of the first transaction was not contingent upon the

consummation of a second, later transaction.  Yet, a jury could equally reasonably conclude that KBEI did orally instruct the Parentes that they must use KBEI to construct the home in order to use the Modified Plans, and that KBEI's outward behavior, including paying and filing for permits, conducting survey work, and erecting construction fencing, all clearly indicate that KBEI did not intend to grant a license to the Parentes.  Given this material factual dispute, summary judgment is not appropriate and the Court denies both KBEI's and the Parentes' motions.  And because Provencal's motion for summary judgment is entirely derivative of the Parentes' motion, the Court denies it as well.

III.     **Mifflin's Motion to Dismiss**

 Mifflin moves to dismiss the Parentes' ICFA claim against him, arguing that they have not adequately alleged a violation of ICFA because discovery between the parties is now complete and, therefore, continuing to rely upon "information and belief" to support the allegations in the Third Party Complaint is improper.  Mifflin also argues that the Parentes have not alleged that he engaged in an unfair practice or that they suffered any injury.  Mifflin moves to dismiss the breach of contract count as well, arguing that the Parentes have not adequately alleged damages.

A.     **ICFA Claim**

Mifflin previously moved to dismiss the Parentes' ICFA claim on the basis that it was alleged in part on information and belief.  The Court denied this motion because Mifflin's argument was entirely undeveloped and allegations based on information and belief are not *per se* improper for ICFA claims.  *See* Doc. 60 at 10.  Mifflin resurrects this argument in his present motion with a new gloss.  He argues that because discovery is now complete, the Parentes cannot continue to bring a claim based on information and belief.  This is true; however, the proper

method for challenging a claim based on such an argument would be summary judgment, not a motion to dismiss. Having already survived a motion to dismiss on an identical argument, the Parentes are not obligated to go back and amend their complaint to add facts they have learned through discovery in order to continue prosecuting their case. If Mifflin believes that the Parentes' ICFA claim lacks a factual basis now that discovery is closed, he is welcome to challenge the claim through summary judgment.

Mifflin also asserts two new arguments for why the Court should dismiss the ICFA claim: that the ICFA claim does not allege an unfair practice that causes substantial injury to consumers and that the Parentes do not have standing. To state an ICFA claim, the Parentes must plead (1) a deceptive or unfair act or practice by Mifflin, (2) Mifflin's intent that the Parentes rely on the deceptive or unfair practice, (3) the unfair or deceptive practice occurred in the course of conduct involving trade or commerce, and (4) Mifflin's unfair or deceptive practice caused the Parentes actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). ICFA plaintiffs may recover for conduct that is either deceptive or unfair. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960, 201 Ill.2d 403, 266 Ill. Dec. 879 (2002); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) ("A plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive."). A practice is deceptive if it "creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001).

Here, the Parentes allege that Mifflin's actions were deceptive. Specifically, they allege that Mifflin did not tell them that he had transferred his interests in the Original Plans to KBEI and that Mifflin did not tell KBEI that he gave the Parentes a non-exclusive license to use the Modified Plans before transferring his rights in those to KBEI. They allege that Mifflin intended

that they rely upon these misrepresentations to get them to enter into the Letter Agreement with him and that because of his misrepresentations they have suffered damages, including the cost of defending the lawsuit against KBEI. These actions had the capacity to deceive to Parentes into believing that when they entered into the agreement with Mifflin, they were going to receive architectural drawings that they could use to build their home, regardless of the builder. This is sufficient to state a claim under ICFA.

Finally, as to standing, the Parentes have alleged actual damages. They have alleged that they entered into the Letter Agreement believing that Mifflin had the authority to prepare the Modified Plans for them and grant them a non-exclusive license to use those plans. Because Mifflin did not in fact have this authority, and the Original Plans belonged to KBEI, the Parentes are now subject to the present copyright infringement suit because they used the plans to build their home. Therefore, the Court denies the motion to dismiss the ICFA Claim.[2]

## B.     Breach of Contract Claim

Mifflin also moves to dismiss the breach of contract claim arguing that the Parentes have not adequately pleaded damages. Mifflin previously moved to dismiss this claim as well and the Court denied that motion. But the present motion is on a different, though closely related basis.

Damages is an essential element of any contract claim. *Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*, 25 N.E.3d 1166, 1174, 2015 IL App (2d) 140589, 389 Ill. Dec. 140 (2015). The level of specificity required at the motion to dismiss stage is not high: just a sufficient level of detail to show that the claim is plausible and put the defendant on notice. *Ashcroft v. Iqbal*, 556 U.S. at 678. Here, the Parentes allege that they have suffered damages, including attorney's

---

[2] The Parentes also ask the Court to deny the motion because Mifflin previously brought a motion to dismiss this claim. However, there is no bar to bringing successive motions to dismiss under Rule 12(b)(6). It is certainly inefficient and disfavored, but not impermissible.

fees expended in defending the present case against KBEI.  This type of damages is allowable under Illinois law and is distinct from attorney's fees sought by a prevailing party against the other party within a lawsuit.  *See Nalivaika v. Murphy*, 458 N.E.2d 995, 997, 120 Ill. App. 3d 773, 76 Ill. Dec. 341 (1983) ("Where the attorney fees sought by the plaintiff are those incurred in actions with third parties brought about by a defendant's misconduct, the litigation expenses are merely a form of damages and are accordingly recoverable from the defendant.").  Therefore, the Parentes have adequately alleged damages and the Court denies the motion to dismiss the breach of contract claim.

## CONCLUSION

For the foregoing reasons, the Court denies the motion to strike [157], denies the cross motions for summary judgment [140,147,150] and denies Mifflin's motion to dismiss [121].


Dated: July 31, 2018

_____
SARA L. ELLIS
United States District Judge